IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANTHONY B.,[1]                                          Case No. 3:22-cv-00407-SB

      Plaintiff,               **OPINION AND ORDER**

   v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

      Defendant.
_____

**BECKERMAN, U.S. Magistrate Judge.**

   Anthony B. ("Plaintiff"), a self-represented litigant, alleges a Fifth Amendment due

process claim against the Commissioner of Social Security ("Commissioner") based on the

Commissioner's alleged failure to pay him a refund of Supplemental Security Income ("SSI")

benefits or provide him with an accounting demonstrating that no refund is due as ordered by an

Administrative Law Judge ("ALJ"). Now before the court are Plaintiff's motion to compel and to

award default judgment, Plaintiff's motion for imposition of sanctions, and the Commissioner's

motion for summary judgment.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party.

PAGE 1 – OPINION AND ORDER

The Court has jurisdiction pursuant to 28 U.S.C. § 1331, and all parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636. For the reasons that follow, the Court denies Plaintiff's motion to compel and to award default judgment, denies Plaintiff's motion for sanctions, and grants the Commissioner's motion for summary judgment.

## BACKGROUND

This case arises out of decades of social security benefit payments, the Social Security Administration's ("SSA") withholding of portions of Plaintiff's benefits to recover alleged overpayments, and Plaintiff's attempts to receive a refund and a clear explanation of his benefits.

## I.    PLAINTIFF'S COMPLAINT

In his amended complaint, Plaintiff describes various notices of overpayments that he received from the SSA and the SSA's attempts to recover the overpayments by withholding some of his benefits. (*See, e.g.*, Am. Compl. ¶¶ 7-9, 12-13, ECF No. 41, describing multiple alleged $64.00 overpayments, a $97.00 overpayment, a $2,640.00 overpayment, and a $5,787.04 outstanding balance from a previous overpayment; Answer ¶¶ 7-9, 12-13, admitting the same; *see also* Am. Compl. ¶¶ 10, 14, explaining that the SSA withheld benefits; Answer ¶¶ 10, 14, admitting the same.)

After the SSA informed Plaintiff in February 2020 that he still owed $3,044.04 in overpayments and that it planned to withhold a portion of his benefits from February 2020 to June 2021, Plaintiff requested reconsideration, reporting that he had already paid back the overpayment through withheld SSI benefits and withheld benefits for care for his dependent son. (*See* Am. Compl. ¶¶ 14-15; Answer ¶¶ 14-15.) After the SSA found no error in its position, Plaintiff requested a hearing. (*See* Am. Compl. ¶¶ 16-17; Answer ¶¶ 16-17.) In November 2021, following an October 2021 hearing, an ALJ waived the overpayment and ordered the SSA to recalculate and explain the overpayment to Plaintiff with specific dates and sources and issue a

refund to Plaintiff if owed. (*See* Am. Compl. ¶¶ 18-19; Answer ¶¶ 18-19.) According to Plaintiff, the SSA did not comply with the ALJ's order. (*See* Am. Compl. ¶ 20.)

## II.    PROCEDURAL HISTORY

Plaintiff filed this case in March 2022. (Compl., ECF No. 1.) In June 2023, the Court appointed pro bono counsel for Plaintiff for the purposes of "drafting an amended complaint and potentially participating in a judicial settlement conference." (Order, ECF No. 36.) With the assistance of counsel, Plaintiff filed an amended complaint, alleging a violation of his Fifth Amendment due process rights. (*See* Am. Compl.)

In September 2023, the parties jointly moved to extend court deadlines. (Mot. to Extend Court Deadlines, ECF No. 38.) The Court granted the motion, setting discovery to be completed by October 16, 2023. (Order, ECF No. 39.) On October 7, 2023, the Commissioner provided Plaintiff a copy of his SSA file, updated as of March 1, 2022. (Decl. Michael Jeter Supp. Def.'s Mot. Compel Resp. ("Jeter Decl.") ¶ 5, ECF No. 55; Jeter Decl. Ex. 3, ECF No. 55-3.) On October 13, 2023, the Commissioner provided Plaintiff with a corrected copy of Plaintiff's SSA file. (Jeter Decl. ¶ 6; Jeter Decl. Ex. 4, ECF No. 55-4.) The day after the close of discovery, the Commissioner provided "additional documents" detailing payment interactions with Plaintiff. (Jeter Decl. ¶ 7; Jeter Decl. Ex. 5, ECF No. 55-5.)

In December 2023, Plaintiff and the Commissioner participated in a judicial settlement conference. (*See* Minutes of Proceedings, ECF No. 47.) When the case did not settle, the Court stayed case management deadlines pending a second settlement conference, to take place after the Commissioner produced a further explanation of Plaintiff's benefits by January 31, 2024, for settlement purposes only. (Order, ECF No. 48.) The Commissioner provided an explanation to the settlement judge, and Plaintiff also received a copy. (*See* Def.'s Resp. Pl.'s Mot. Compel

("Def.'s Mot. Compel Resp.") at 4-5, ECF No. 54; Pl.'s Mot. Compel and Award Default J.

("Pl.'s Mot.") at 2, ECF No. 53.)

In March 2024, Plaintiff's counsel filed a notice of completion of specific pro bono

appointment, and the Court terminated his appointment. (*See* ECF Nos. 49-50.) The parties did

not participate in a second settlement conference. Plaintiff now proceeds as a self-represented

party.

Plaintiff filed his motion to compel and for default judgment on April 17, 2024. (*See* Pl.'s

Mot.) According to the Commissioner, because the January 31, 2024, letter "was provided to

Plaintiff during mediation, out of an abundance of caution[,] Defendant mailed Plaintiff another

letter on April 26, 2024, again explaining Defendant's payment interaction with him." (Def.'s

Mot. Compel Resp. at 7; *see also* Jeter Decl. ¶ 9; Jeter Decl. Ex. 7, ECF No. 55-7.) The

Commissioner subsequently filed a motion for summary judgment (Def.'s Mot. Summ. J.

("Def.'s Mot."), ECF No. 58), and Plaintiff filed a motion for imposition of sanctions (Pl.'s Mot.

Imposition of Sanctions ("Pl.'s Sanctions Mot."), ECF No. 63).

## III.    EXPLANATION OF BENEFITS AND PLAINTIFF'S REFUND

The Commissioner's explanations of benefits over the course of this litigation reveal that

Plaintiff has intermittently received SSI benefits as well as Disability Insurance Benefits ("DIB")

dating back to 1996. (*See* Jeter Decl. Ex. 6 at 6, ECF No. 55-6; Jeter Decl. Ex. 7 at 1.)

Specifically, the SSA approved Plaintiff's April 1996 application for SSI benefits. (*See*

Jeter Decl. Ex. 6 at 1, 4.) According to the Commissioner, in September 1997, Plaintiff received

two installments of backpay ($4,959.00 and $3,376.34) and received monthly payments from

October 1997 to June 2000 totaling $4,124.80. (*Id.* at 1, 4-5.) In total, Plaintiff received

$12,460.14 in combined backpay and monthly payments.[2] (*Id.* at 4-5.) Plaintiff stopped receiving SSI benefits in June 2000. (*Id.* at 5.)

According to the Commissioner, the SSA discovered that Plaintiff had received overpayments of benefits starting in the first month that Plaintiff received benefits (April 1996) because Plaintiff did not report that he was living with his wife, who was earning an income, and because Plaintiff's DIB benefits pushed him over the SSI earnings cap. (*See id.* at 1; Jeter Decl. Ex. 7 at 1.) Plaintiff denies that description of events. (*See* Pl.'s First Supp. at 1, ECF No. 64; Pl.'s Second Supp. at 1-2, ECF No. 66, explaining that he and his wife separated before he started receiving benefits from the SSA and that she did not financially support him after their split.)

In total, the SSA concluded that Plaintiff had received $10,973.64 in overpayments. (Jeter Decl. Ex. 6 at 1, 5.) The SSA waived two payments ($485.00 and $596.00, totaling $1,081.00), reducing Plaintiff's overpayment to $9,892.64.[3] (*Id.* at 1, 6.) To recover the overpayment, the SSA began withholding some of Plaintiff's benefits starting in May 1998. (*Id.* at 1, 4, noting, for example, that the SSA withheld $49.40 for overpayment and paid Plaintiff $275.60 in May 1998.) However, according to the Commissioner, the SSA subsequently discovered that Plaintiff

---

[2] The Commissioner represents in his motion that Plaintiff received $10,973.64 total in backpay and monthly payments between 1997 and 2000 (Def.'s Mot. at 3), contrary to the explanations of benefits in the record.

[3] *But see* Decl. Christianne Voegele Supp. Def.'s Mot. Dismiss ("Voegele Decl.") at 14, ECF No. 11-1, the SSA's May 2018 notice of overpayment explaining that Plaintiff's former balance was either $10,433.34 or $9,982.64; *id.* at 63, the ALJ's opinion noting a $9,594.00 waiver of overpayment in 2003.

was not owed *any* benefit from November 1997 to June 2000. (*Id.* at 4-5.) As a result, the amounts withheld for overpayment did not pay down the amount Plaintiff owed.[4] (*Id.* at 1.)

In December 2002, Plaintiff again filed for and was awarded SSI benefits. (*Id.* at 2; Voegele Decl. at 3, 5-13.) In March 2003, the SSA again began withholding money from Plaintiff's SSI benefits to pay down the $9,892.64 overpayment. (Jeter Decl. Ex. 6 at 2, 7.) The SSA also intermittently withheld DIB benefits to pay down the overpayment. (*Id.* at 16, noting that the SSA withheld $27.00 in January 2003, $1.00 in April 2008, $1,335.20 in October 2018, $417.80 in December 2018, and $200.00 in February 2020, totaling $1,981.00.)

Separately, in July 2016, the SSA retroactively factored a lump-sum worker's compensation payment into Plaintiff's Social Security benefits matrix, calculating that the SSA had overpaid Plaintiff $2,640.00 between September 2013 and May 2016. (*See* Jeter Decl. Ex. 7 at 2.) In August 2018, an ALJ issued a decision in Plaintiff's favor regarding the $2,640.00 overpayment, explaining that what the agency had believed to be a lump-sum worker's compensation payment was, in reality, a settlement check related to a property dispute and should not have been factored into Plaintiff's benefits calculation. (*See* Voegele Decl. at 60.) However, in October 2018, the SSA notified Plaintiff that it had overpaid him $2,640.00 between September 2013 and May 2016 because of an alleged worker's compensation payment. (*Id.* at 19, 60.) The SSA noted that it "used $887.00" of his benefits to recover the overpayment. (Voegele Decl. at 20, 60; Am. Compl. ¶ 10; Answer ¶ 10.) In November 2021, an ALJ again issued an opinion in Plaintiff's favor, finding that the overpayment related to Plaintiff's

---

[4] Take an example. Say Plaintiff owes $10. The SSA calculates his monthly benefit to be $5, withholds $2 to put toward the overpayment, and pays Plaintiff $3. The SSA later discovers that Plaintiff should have, in fact, received $0 in benefits for that month because of another source of income. Because Plaintiff was never entitled to the $2, he has not paid down the amount he owes. Instead, the $10 of overpaid benefits increases by the $3 that he received, totaling $13 at the end of the interaction.

settlement had already been adjudicated and ordering that "[a]ny continued recovery that

impinges on [that] decision is refunded." (Voegele Decl. at 63.) According to the Commissioner,

the SSA "cancelled the overpayment assessment, and it was never collected." (Jeter Decl. Ex. 7

at 2.) According to Plaintiff, the SSA did not cancel the overpayment assessment as ordered but

instead withheld $1,100.00 and continued to withhold "work comp offset." (*See* Pl.'s First Supp.

at 1; Pl.'s Resp. Def.'s Mot. Summ. J. at 1, ECF No. 61.)

Related to the original $9,892.64 overpayment, the SSA continued withholding benefits

from March 2003 until December 2021 (ranging between $1.00 and $75.00 each month).[5] (Jeter

Decl. Ex. 6 at 7-14.) According to SSA notices, Plaintiff owed $5,884.04 by May 2018,

$4,164.84 by December 2018, and $3,044.04 by February 2020. (Voegele Decl. at 3, 14-18, 38-

50.)

In November 2021, an ALJ issued an opinion in Plaintiff's favor. (*See* Voegele Decl. at

60-64.) The ALJ noted that the record is confusing and does not allow for a precise calculation,

and waived Plaintiff's overpayments:

> The extant record at the hearing level does not allow for
> precise determination of the sources of the claimant's
> overpayment. The SSA's communications to the claimant do not
> clearly explain where the body of the overpayment originated, or
> the intertwined smaller overpayments. A review of the record
> indicates that it is probable the claimant has been double charged

---

[5] To determine the amount of monthly withholding, the SSA calculated Plaintiff's
monthly SSI payment by subtracting Plaintiff's other "countable income" from the SSI Federal
Benefit Rate ("SSI FBR"). (Jeter Decl. Ex. 7 at 2.) The SSA then applied up to $75.00 toward his
overpayment (ten percent of the SSI FBR, i.e. the SSA's standard recovery rate). (*Id.* at 2-3.)

As an example, the Commissioner explains that in April 2018, Plaintiff received $706.00
in other social security benefits, minus a $20.00 general exclusion, meaning Plaintiff had
$686.00 in countable income. (*Id.* at 3.) The Commissioner subtracted Plaintiff's countable
income ($686.00) from the SSI FBR ($750.00). (*Id.*) Accordingly, Plaintiff's April 2018 SSI
benefit was $64.00, which the SSA held toward his overpayment because it was less than the
$75.00 standard recovery. (*Id.*)

by the SSA, potentially due to erroneous recovery of worker's compensation, or an older source that has not been clearly documented (see [record source], noting a $9,594 overpayment in 2003 that was waived). This should be recalculated and explained with specific dates and sources of overpayments below.

Regardless, the overpayment determined by the SSA (with a remaining overpayment amount of $3,978.04 in October 2020 . . . ) is waived, as the claimant was not at fault for causing the overpayment, and recovery is against equity and good conscience. There is no evidence that the claimant has failed to furnish information which the claimant knew or should have known was material; any incorrect [statements] made by the claimant which he knew or should have known was incorrect; or failure to return a payment which he knew or could have been expected to know was incorrect. The claimant has made efforts to communicate with the SSA, and is understandably confused about the origin and amounts of his overpayments, and is not at fault for these overpayments. At the hearing, he testified that he had tried to sort out the overpayments for several years, but was still unsure of their validity or source (offering several potential causes, including his original back benefits in 2003, his marital status at the time, his son's accounts, and the adjudicated settlement).

(*Id.* at 63, citations omitted.)

During the pendency of this litigation, the Commissioner provided Plaintiff with a three-page, narrative-form description of his benefits titled "Payment Analysis"; fourteen pages of spreadsheets documenting Plaintiff's monthly SSI payments and the SSA's monthly SSI withholdings dating back to 1996; and, most recently, a six-page, narrative-form letter. (*See* Jeter Decl. Exs. 6-7.)

The SSA documents reveal that, from March 2003 to December 2021, the SSA paid Plaintiff a combined total of $691.80 in SSI benefits. (Jeter Decl. Ex. 6 at 3, 7-14.) Based on updated calculations, the full amount of Plaintiff's benefits for that period, without any withholdings for overpayment, should have been $6,695.00. (*Id.*) Accordingly, following the ALJ's waiver, the SSA owed Plaintiff the difference between the amount due ($6,695.00) and the amount paid ($691.80): $6,003.20. (*Id.* at 3, 14.) Further, according to the SSA's records, the

SSA had withheld $1,981.00 from Plaintiff's DIB benefits toward the original overpayment. (*Id.* at 3, 16.) In sum, with respect to the original $9,892.64 overpayment, the SSA owed Plaintiff $6,003.20 plus $1,981.00, totaling $7,984.20.[6] (Jeter Decl. Ex. 7 at 5.)

The six-page, narrative-form letter indicates that the SSA had partially refunded Plaintiff with four payments ($1,940.99 in December 2021; $2,523.00 in January 2022; $1,537.21 in January 2022; and, following Plaintiff's initiation of the instant litigation, $1,953.00 in May 2022). (*Id.* at 4-5; *see also* Decl. Andre Zante Supp. Def.'s Mot. Summ. J. ("Zante Decl.") ¶ 6, ECF No. 59, testifying that the SSA deposited $1,953.00 into Plaintiff's bank account in May 2022; Zante Decl. Ex. 3, ECF No. 59-3, attaching proof of payment for the first three deposits.) In May 2024, after Plaintiff filed his motion to compel and to award default judgment, the Commissioner issued Plaintiff an additional $30.00 payment with the six-page letter to complete Plaintiff's refund. (Jeter Decl. Ex. 7 at 5; Zante Decl. ¶ 4; Zante Decl. Ex. 2, ECF No. 59-2.) In sum, the Commissioner has presented evidence that the SSA has repaid Plaintiff $7,984.20 ($1,940.99 + $2,523.00 + $1,537.21 + $1,953.00 + $30.00 = $7,984.20). (*See* Jeter Decl. Ex. 7 at 5.)

## DISCUSSION

Several motions are now before the Court. Plaintiff moves to compel the Commissioner to comply with his request for a total accounting of his benefits. (Pl.'s Mot. at 1-3.) Plaintiff moves for an award of default judgment based on the Commissioner's failure to act in good faith

---

[6] The SSA documented other isolated instances of SSI overpayments (*see* Voegele Decl. at 14, 24, 32, noting that the SSA overpaid Plaintiff $97.00 in March 2018, $64.00 in October 2018, and $64.00 in December 2018) and DIB overpayments (*see* Jeter Decl. Ex. 7 at 1-2, describing overpayments of $500.00 in November 2003 and February 2006, $684.00 in April 2008, and $2,592.55 in November 2017). The SSA resolved those overpayments as they arose (*see id.*), and the SSA did not repay Plaintiff any of the related withheld benefits because they were not the subject of the ALJ's opinion. (*See* Def.'s Mot. at 4 n.4.)

throughout these proceedings. (*Id.* at 3-4.) Plaintiff also moves for the imposition of sanctions. (*See* Pl.'s Sanctions Mot.) The Commissioner moves for summary judgment on the ground that Plaintiff's due process claim is now moot. (*See* Def.'s Mot at 2-12.)

## I.    LOCAL RULE 7-1

The Commissioner argues that the Court should deny Plaintiff's motions based on Plaintiff's failure to comply with Local Rule 7-1's certification of conferral requirement. (Def.'s Mot. Compel Resp. at 2-3; Def.'s Resp. Pl.'s Mot. Default J. ("Def.'s Mot. Default J. Resp.") at 2, ECF No. 56.)

Local Rule 7-1 provides that "the first paragraph of every motion must contain a certification regarding attempts to meet and confer; otherwise, the court may deny the motion." *Ovitsky v. Oregon*, 594 F. App'x 431, 431 (9th Cir. 2015) (citing D. Or. R. 7-1). "District courts have broad discretion in interpreting and applying their local rules." *Miranda v. S. Pac. Transp. Co.*, 710 F.2d 516, 521 (9th Cir. 1983) (citing *Lance, Inc. v. Dewco Servs., Inc.*, 422 F.2d 778, 783-84 (9th Cir. 1970)).

Plaintiff's motions do not comply with Local Rule 7-1, and the parties did not confer before Plaintiff filed the motions. (*See* Pl.'s Mot. at 1; Jeter Decl. ¶ 2.) However, because the parties have already briefed several issues before the Court and in the interest of resolving the parties' disputes expeditiously, and because Plaintiff is unrepresented, the Court in its discretion declines to deny Plaintiff's motions for noncompliance with Local Rule 7-1. *See Schoene v. Spirit Airlines, Inc.*, No. 3:22-cv-1568-SI, 2023 WL 3495832, at *1 n.1 (D. Or. May 17, 2023) (permitting briefing that did not comply with the Local Rules "[b]ased on Plaintiff's *pro se* status, combined with the fact that Defendant's pending motion could dismiss the entirety of Plaintiff's case"); *Gann v. Garcia*, No. 1:19-cv-00439-DAD-BAK-SAB-PC, 2022 WL 332389, at *2 (E.D. Cal. Jan. 25, 2022) ("Plaintiff is entitled to leniency as a *pro se* litigator; therefore, to

the extent possible, the Court endeavors to resolve his motion to compel on its merits.")
(citations omitted); *J&J Sports Prods., Inc. v. Garcia*, No. 6:17-cv-00673-JR, 2018 WL
1441182, at *2 (D. Or. Feb. 28, 2018) (declining to deny a motion on Local Rule 7-1 grounds "in
the interest of judicial economy"), *findings and recommendation adopted*, 2018 WL 1434811 (D.
Or. Mar. 21, 2018); *Kazemy v. BMW of N. Am., LLC*, No. 3:13-cv-02050-AC, 2014 WL
3667217, at *3 (D. Or. July 17, 2014) (concluding that the plaintiff's "rule [7-1] violations will
be forgiven here"); *Wright v. The Am.'s Bull.*, No. 3:09-cv-00956-PK, 2010 WL 2608296, at *2-
3 (D. Or. Apr. 30, 2010) (considering motions on the merits despite the parties' failure to comply
with Local Rule 7-1 "[i]n the interest of resolving this dispute speedily"), *findings and
recommendation adopted*, 2010 WL 2608328 (D. Or. June 23, 2010).

## II.    MOTION TO COMPEL

Plaintiff moves to compel the Commissioner to comply with his discovery requests. (Pl.'s
Mot. at 2.) Specifically, Plaintiff asserts that he requested a copy of his social security file and a
total accounting of his benefits with specific dates and sources, as ordered by the ALJ. (*Id.*)
Plaintiff also requests that the Court order the SSA to pay for an independent accounting of his
benefits, for copies of all checks that the SSA believes Plaintiff cashed with Plaintiff's signature
on the back,[7] and for proof of the SSA's claim that he worked three unreported jobs while
receiving benefits. (*See* Pl.'s Resp. Def.'s Mot. Summ. J. ("Pl.'s Resp.") at 1, ECF No. 61; Pl.'s
Supp. Mot. Compel at 1, ECF No. 62.)

///

---

[7] To the extent that Plaintiff requests proof of payment related to the $7,984.20 of
repayments, the Commissioner has attached evidence of three deposits into Plaintiff's bank plus
the issuance of a $30.00 check. (*See* Zante Decl. Exs. 2-3.) To the extent Plaintiff requests proof
that he received the original checks dating back to 1996 that are the subject of the overpayment,
copies of those checks are no longer relevant because the ALJ waived that alleged overpayment.

The Commissioner responds that it has provided Plaintiff's social security file and an accounting and explanation of benefits. (Def.'s Mot. Compel Resp. at 3-7.) Further, the Commissioner asserts that Plaintiff did not serve it with any discovery requests pursuant to Federal Rule of Civil Procedure ("Rule") 34, and Plaintiff has improperly filed his motion to compel after the close of fact discovery without showing good cause to reopen discovery. (*Id.* at 7-9.)

Rule 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1) (listing relevant proportionality factors). Courts construe Rule 26(b)(1) "broadly." *Roberts v. Legacy Meridian Park Hosp., Inc.*, 299 F.R.D. 669, 671 (D. Or. 2014). When a party fails to provide requested discovery that falls within the scope of Rule 26(b)(1), Rule 37(a)(1) allows the requesting party to "move for an order compelling disclosure or discovery." *Id.* at 672 (quoting FED. R. CIV. P. 37(a)(1)); *see* FED. R. CIV. P. 37(a)(3)(B)(iv) (explaining that a party may move to compel if "a party fails to produce documents . . . as requested under Rule 34").

Here, Plaintiff has not demonstrated that the Commissioner failed to produce documents that he requested under Rule 34. As an initial matter, Plaintiff concedes that the Commissioner provided his social security file. (Pl.'s Mot. at 2, "They did not comply with any of my request[]s for my file until the last day [of discovery].")

Further, Plaintiff appears to acknowledge that he has now received an accounting. Plaintiff notes that he received information from the Commissioner on January 31, 2024, but asserts that the "charts and graph[s]" were not "understandable" even to his lawyer at the time. (*Id.* at 2-3.) Plaintiff also alleges that the accounting is deficient because the Commissioner has

"made it clear [that] they have no problems with telling falsehood[]s." (Pl.'s Resp. at 1.) The Court concludes that, although the record suggests that the Commissioner had previously been less than forthcoming with a clear explanation of its calculations of Plaintiff's benefits (*see* Answer ¶ 19, admitting that an ALJ ordered the SSA to recalculate and explain any overpayment to Plaintiff with specific dates and sources), the Commissioner has now provided Plaintiff with explanations and documentation detailing the SSA's payment interactions with Plaintiff dating back to 1996, including a three-page, narrative-form description of his benefits, fourteen pages of spreadsheets, and a six-page, narrative-form letter. (*See* Jeter Decl. Exs. 6-7.)

Plaintiff has not explained what specific information is missing from the Commissioner's accounting. Further, Plaintiff has not indicated that he requested anything different or additional pursuant to Rule 34. *See* D. Or. R. 37-1 (requiring a motion to compel to include "the pertinent interrogatory, question, request, or notice of deposition, including any pertinent responses and/or objections"); *Gann*, 2022 WL 332389, at *1 ("Plaintiff has the burden of informing the court why he believes the defendants' responses are deficient[.]") (citations omitted). Instead, it appears that Plaintiff is requesting certain discovery (such as copies of checks with his signature and proof of his unreported jobs) for the first time.

For these reasons, the Court denies Plaintiff's motion to compel. *See Hackworth v. Arevalos*, No. 1:19-cv-01362-DAD-BAK-EPG-PC, 2022 WL 1051310, at *2 (E.D. Cal. Mar. 9, 2022) (denying the self-represented plaintiff's motion to compel where the plaintiff had "failed to inform the Court which discovery requests are the subject of the motion to compel and which of the responses are disputed" and the plaintiff had not demonstrated prejudice); *Petricevic v. Shin*, No. 20-cv-00283 LEK-WRP, 2021 WL 11716408, at *5 (D. Haw. Jan. 29, 2021) (denying

PAGE 13 – OPINION AND ORDER

a motion to compel where the motion did not "set forth any legal or factual arguments explaining to the Court why any specific responses to these particular requests are deficient").

## III.    MOTION FOR DEFAULT JUDGMENT

Plaintiff moves for default judgment based on the Commissioner's failure to act in good faith throughout the instant proceedings. (Pl.'s Mot. at 3-4.) Specifically, Plaintiff argues that the Commissioner failed to comply with his discovery requests, the discovery the Commissioner did provide was not understandable, the Commissioner did not engage in the settlement conference in good faith, and the Commissioner acted with "blatant disregard for [this] Court's orders." (*Id.* at 3.) The Commissioner responds that the Commissioner has not failed to plead or otherwise defend this case and that Plaintiff has not demonstrated that he is entitled to entry of default judgment. (Def.'s Mot. Default J. Resp. at 2-5.)

Entry of default judgment is a two-step process. Pursuant to Rule 55(a), the Clerk is required to enter an order of default if a party against whom affirmative relief is sought has failed to timely plead or otherwise defend an action. Upon entry of default, "the factual allegations of the complaint, except those relating to the amount of damages, [are] taken as true." *Geddes v. United Fin. Group*, 559 F.2d 560 (9th Cir. 1977) (citations omitted).

After the Clerk enters default, the plaintiff may move for entry of default judgment. *See* FED. R. CIV. P. 55(b)(2). The decision whether to enter default judgment is a discretionary one. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (so explaining). In exercising this discretion, courts in the Ninth Circuit consider seven factors, known as the "*Eitel* factors." *See generally Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986). "A default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court." FED. R. CIV. P. 55(d).

///

PAGE 14 – OPINION AND ORDER

Here, the Clerk has not entered an order of default against the Commissioner. *See Wahab v. Wahab*, No. 3:23-cv-00098-SB, 2024 WL 3183203, at *1 (D. Or. June 26, 2024) ("Failure to comply with Rule 55's two-step process warrants denial of a motion for default judgment."); *Brooks v. United States*, 29 F. Supp. 2d 613, 618 (N.D. Cal. 1998) (denying the self-represented plaintiffs' request for default judgment where the clerk had declined to enter default against the defendant), *aff'd*, 162 F.3d 1167 (9th Cir. 1998). Further, Plaintiff has not established that an entry of default is warranted: the Commissioner has timely appeared (*see* Answer) and defended this action by participating in discovery and mediation and timely filing a motion for summary judgment (*see* Def.'s Mot.). Accordingly, the Court denies Plaintiff's motion for default judgment. *See Sims v. Lee*, 651 F. App'x 570, 571 (9th Cir. 2016) ("The district court did not abuse its discretion by denying [the plaintiff's] motion for default judgment against the United States because [the plaintiff] failed to make a showing justifying the entry of default judgment and the clerk never entered a default." (citing FED. R. CIV. P. 55(d) and *Eitel*, 782 F.2d at 1471)).

## IV.    MOTION FOR SANCTIONS

Plaintiff moves for sanctions against the Commissioner for the Commissioner's alleged failure to comply with his discovery request for an accounting of his payment history, for "calculating [his] cost of living a[d]justment based on what [the SSA] paid after they took money from [Plaintiff]," for "violating the [worker's compensation] agreement and continuing to take [worker's compensation] offset" after the SSA had been ordered to stop, and for not repaying the wrongly withheld worker's compensation offset. (Pl.'s Sanctions Mot. at 1.) Plaintiff does not specify what sanctions he seeks, nor does Plaintiff's motion invoke any legal authority. (*See id.*)

Rule 37(b) "empowers the court to take remedial actions if a party 'fails to obey an order to provide or permit discovery[.]'" *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1222 (9th Cir. 2018) (quoting FED. R. CIV. P. 37(b)(2)(A)). In the Ninth Circuit, discovery sanctions are

appropriate only in "extreme circumstances" and where the discovery violation is "due to willfulness, bad faith, or fault of the party." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002) (quoting *United States v. Kahaluu Constr. Co.*, 857 F.2d 600, 603 (9th Cir. 1988)); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (holding that a district court may assess attorney's fees as a discovery sanction when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons") (simplified); *see also* FED. R. CIV. P. 11(c) (providing for sanctions where an attorney or unrepresented party makes a misrepresentation to the court about, *inter alia*, whether "the claims, defenses, and other legal contentions are warranted by existing law" or "the factual contentions have evidentiary support").

No sanctions are warranted here. The Commissioner has not violated any court order, let alone committed a willful violation of a court order. *See Hepburn v. Teleperformance Corp.*, 828 F. App'x 439, 440 (9th Cir. 2020) ("The district court did not abuse its discretion in denying [the self-represented litigant's] motion for default judgment as a discovery sanction because [the] defendant did not violate a court order, and the district court was within its discretion in finding that [the] defendant's actions did not warrant the extreme sanction of entry of a default judgment.") (citation omitted). Nor has Plaintiff presented evidence that the Commissioner violated Rule 11. Further, to the extent Plaintiff seeks sanctions for the Commissioner's alleged due process violations leading up to this litigation, a motion for sanctions is not the appropriate mechanism to challenge the merits of a claim or defense. *See, e.g.*, *Cont'l Recs., LLC v. Royalty Fam., Inc.*, No. 23-cv-05797 PA (BFMx), 2023 WL 9319230, at *3 (C.D. Cal. Dec. 13, 2023) (denying motion for Rule 11 sanctions related to the merits of the claims at issue and noting that "[t]he problem with Defendants' Motion for Sanctions is that it seeks t[o] litigate the substantive validity of Plaintiff's claims").

V.     **SUMMARY JUDGMENT**

A.     **Legal Standards**

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). At the summary judgment stage, the court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *See Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005). The court does not assess the credibility of witnesses, weigh evidence, or determine the truth of matters in dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

B.     **Analysis**

Plaintiff asserts a single claim for violation of the Due Process Clause without articulating whether he alleges a procedural or substantive due process claim. (Am. Compl. ¶¶ 22-25.)

1.     **Procedural Due Process**

"A procedural due process claim hinges on proof of two elements: (1) a protectible liberty or property interest . . . ; and (2) a denial of adequate procedural protections." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005) (simplified); *see also Hoover v. Colvin*, No. 3:13-cv-00823-SI, 2013 WL 6385925, at *3 (D. Or. Dec. 6, 2013) ("Applicants for social security disability benefits are entitled to due process in the determination of their claims.") (citations omitted). To determine if a plaintiff received adequate procedural protections, courts consider three factors: (1) "the private interest that will be affected by the official action;" (2)

"the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (citing *Goldberg v. Kelly*, 397 U.S. 254, 263-71 (1970)). At a minimum, "[i]t is axiomatic that due process requires that a claimant receive meaningful notice and an opportunity to be heard before his claim for disability benefits may be denied." *Udd v. Massanari*, 245 F.3d 1096, 1099 (9th Cir. 2001), *as amended on denial of reh'g* (May 3, 2001) (citing *Mathews*, 424 U.S. at 333); *but see Setzer v. Astrue*, No. 3:10-cv-05766-RJB, 2011 WL 5509422, at *3 (W.D. Wash. Oct. 18, 2011) (noting that an applicant for Social Security disability benefits has a "significant property interest in receiving benefits" but finding that neither Ninth Circuit nor Supreme Court case law "says [any]thing about the type of process to which plaintiff is due") (citations omitted), *report and recommendation adopted*, 2011 WL 5520282 (W.D. Wash. Nov. 10, 2011). The Commissioner argues that any procedural due process claim is without merit or moot because Plaintiff received an opportunity to be heard at a meaningful time and in a meaningful manner before the ALJ. (Def.'s Mot. at 9-10.) The Commissioner also argues that the United States has sovereign immunity from damages. (*Id.* at 12-13.)

There is no clear guidance about what process Plaintiff was due in a scenario such as this, where Plaintiff received a favorable opinion from an ALJ and thus had no reason to seek review from the Appeals Council or to seek timely judicial review, but the Commissioner failed to comply with the ALJ's order. However, regardless of whether the required process was initially lacking, the Court concludes that any procedural due process claim for injunctive or declaratory

relief is now moot because it is undisputed that the Commissioner has provided Plaintiff with explanations of benefits and paid the refund in full. *See Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008) ("The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." (quoting *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988))); *see also Cook v. Brown*, 364 F. Supp. 3d 1184, 1190 (D. Or. 2019) ("[T]he action in question, *i.e.*, the forced deduction of agency fees from their paychecks and transfer to AFSCME, is not occurring. There is simply no controversy, let alone an immediate one, to warrant a declaratory judgment. Such a declaration would therefore be an impermissible advisory opinion."), *aff'd*, 845 F. App'x 671 (9th Cir. 2021); *Keovongsa v. Colvin*, No. 16-cv-842-BTM-NLS, 2016 WL 6962748, at *3 (S.D. Cal. Nov. 28, 2016) ("Though Plaintiff was initially provided with deficient notice, it is undisputed that the Appeals Council later reviewed her application and finalized the ALJ's decision. Therefore, there is no procedural harm to redress and Plaintiff's procedural due process claim [for declaratory or injunctive relief] is rendered moot.").

To the extent Plaintiff requests damages for his procedural due process claim (*see* Am. Compl. ¶ 21, pleading only "[d]amages are to be determined at trial"), Plaintiff names the Commissioner as a defendant in his official capacity (*id.* ¶ 3) and the United States has not waived its sovereign immunity with respect to claims for damages in this context. *See Lane v. Pena*, 518 U.S. 187, 192 (1996) ("To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims." (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992))); *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *Sigman v. United States*, 217 F.3d 785, 792

(9th Cir. 2000) ("Suits against the United States and its agencies are barred by sovereign immunity unless permitted by an explicit waiver of immunity from suit."); *McKenzie v. Soc. Sec. Admin.*, No. 1:23-cv-01620-CDB, 2024 WL 233181, at *3 (E.D. Cal. Jan. 22, 2024) ("Sovereign immunity extends to the Social Security Administration and its employees." (citing, *inter alia*, *Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1117 (9th Cir. 2003) and *Hodge v. Dalton*, 107 F.3d 705, 707 (9th Cir. 1997))); *see also Fontanez v. U.S. Soc. Sec. Admin.*, No. 17-cv-2844 (RDM), 2020 WL 5545439, at *10 (D.D.C. Sept. 16, 2020) ("Here, nothing in Section 405(g) waives the sovereign immunity of the United States with respect to claims for damages, and Plaintiff fails to identify any other waiver of sovereign immunity for damage claims relating to the adjudication of social security benefits." (citing, *inter alia*, *De Lao v. Califano*, 560 F.2d 1384, 1391 (9th Cir. 1977))).

### 2. Substantive Due Process

The Commissioner argues that any substantive due process claim is moot because the Commissioner has now provided Plaintiff a full explanation of benefits, as ordered by the ALJ, and has paid Plaintiff his full refund, and that the United States has sovereign immunity from damages. (Def.'s Mot. at 10-13.)

"Substantive due process refers to certain actions that the government may not engage in, no matter how many procedural safeguards it employs." *C.R. v. Eugene Sch. Dist. 4J*, 835 F.3d 1142, 1154 (9th Cir. 2016) (quoting *Wedges/Ledges of Cal. v. City of Phx., Ariz.*, 24 F.3d 56, 66 (9th Cir. 1994)). The Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citations omitted). When government action does not interfere with a fundamental right or liberty interest, "rational basis review" applies and the government must

offer a "legitimate reason" for its action. *Yim v. City of Seattle*, 63 F.4th 783, 798-99 (9th Cir. 2023) (citations omitted).

The Court agrees that Plaintiff's substantive due process claim for injunctive or declaratory relief is moot because, as of May 2024, the Commissioner has now paid Plaintiff the full refund that the ALJ ordered. To the extent Plaintiff argues that the Commissioner miscalculated his monthly benefits in any given month (such as Plaintiff's suggestion that the Commissioner inappropriately calculated a cost-of-living adjustment), that claim is not part of Plaintiff's amended complaint and is not before the Court. (*See generally* Am. Compl.) Further, Plaintiff has not pointed to any evidence in the record that the Commissioner violated the two ALJs' orders related to workers' compensation nor that the Commissioner has failed to pay him the $7,984.20 repayment. (*See* Pl.'s Resp. at 1, indicating that Plaintiff does not dispute that the SSA paid him back $7000.) Although Plaintiff disputes the Commissioner's calculations of the amount of benefits the SSA withheld over the years, arguing that his W-2s demonstrate that the SSA withheld between $3,600 and $3,700 per year on average for overpayments, Plaintiff has not submitted any copies of W-2s to the Court nor pointed to any other evidence in the record suggesting that the Commissioner has miscalculated the amount due. (*See* Pl.'s First Supp. at 1.) Further, as explained, to the extent Plaintiff requests damages for his substantive due process claim, the United States has not waived its sovereign immunity with respect to claims for damages in this context.

For all of these reasons, the Court grants the Commissioner's motion for summary judgment.

///

///

**CONCLUSION**

For the reasons stated, the Court DENIES Plaintiff's motion to compel and award default judgment (ECF No. 53), GRANTS the Commissioner's motion for summary judgment (ECF No. 58), and DENIES Plaintiff's motion for imposition of sanctions (ECF No. 63).

**IT IS SO ORDERED.**

DATED this 23rd day of July, 2024.

HON. STACIE F. BECKERMAN
United States Magistrate Judge